**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

In re: CCA Recordings 2255 Litigation,

                  **Petitioners,**

v.                             **Case No. 19-cv-2491-JAR-JPO**

                             **(This Document Relates to *United States v. Steven M. Hohn*, Case No. 12-cr-20003-JAR-3, *Steven M. Hohn v. United States*, Case No. 19-cv-2082-JAR-JPO; *United States v. William Mitchell*, Case No. 13-cr-20051-JAR-1, *William Mitchell v. United States*, Case No. 17-cv-2380-JAR-JPO.)**

United States of America,

                  **Respondent.**

---

## MEMORANDUM AND ORDER

This matter comes before the Court on the government's Motion for Order (Doc. 891) allowing it to review the audio recordings on which Petitioners Steven Hohn and William Mitchell's claims are based in advance of their evidentiary hearings.  Petitioners ask the Court to deny the government's motion.  For the reasons set forth in detail below, the Court denies the government's motion.

## I.      Background

This Court has previously addressed whether the government should be permitted access to and review of the content of the audio recordings.  The Court assumes the reader is familiar with its rulings in these consolidated proceedings that precipitate the matter before the Court.  The Court does not restate the underlying facts and conclusions of law in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

*June 4, 2020 Order*

On June 4, 2020, this Court entered an order rejecting the government's argument that petitioners implicitly waived attorney-client privilege over the communications when they placed the communications at issue in bringing their habeas petitions.[1] Citing the Tenth Circuit's decision in *United States v. Pinson*, the government argued that by placing the attorney-client communications at issue in their § 2255 motions, petitioners impliedly waived any right to preclude discovery of those communications and to defend itself, the government must be permitted to independently assess the content of the communications that petitioners claim are protected.[2] The Court disagreed, finding that *Strickland v. Washington* instructs that Sixth Amendment ineffective assistance claims fall into two camps: intentional ineffectiveness caused by the government's extrinsic interference and actual ineffectiveness caused by the intrinsic actions or advice of counsel.[3] The Court distinguished the intentional-intrusion claims at issue here with the actual ineffectiveness claim at issue in *Pinson*, and agreed with petitioners that their claims do not require the Court to evaluate the reasonableness of defense counsel's performance in order to determine whether the government interfered with the effective assistance of counsel or whether they have demonstrated prejudice, because under their theory of recovery under *Shillinger v. Haworth*, prejudice is presumed and a Sixth Amendment violation is per se.[4]

Later that day, Judge O'Hara ruled in a separate order that petitioners "are at liberty to make well-founded attorney-client-privilege assertions in response to the government's

---

[1] Doc. 225 at 5–9.

[2] *Id.* at 6 (citing 584 F.3d 972, 977–78 (10th Cir. 2009)).

[3] *Id.* (citing 466 U.S. 668, 691 (1984)).

[4] *Id.* at 6–9 (citing 70 F.3d 1132, 1142 (10th Cir. 1995)).

discovery, if they provide the required privilege log."[5]  Judge O'Hara conditionally sustained petitioners' privilege objection to the requests for the audio and video recordings because, by their nature, such recordings include communications that petitioners assert are subject to the attorney-client privilege.  The court noted that nearly every petitioner filed a PL with details of the recordings on May 14, 2020,[6] and permitted the government to file a motion specifically addressing the challenged recordings if it had *specific* good cause to challenge the privilege(s) asserted in any one of them.[7]

### October 15, 2020 Orders

On October 15, 2020, the Court reaffirmed its ruling on the government's implied waiver argument and, in light of the government's blanket objections to petitioners' privilege logs ("PLs"), established a procedure for *in camera* review of the recordings.[8]  The Court addressed petitioners' argument that *Pinson* necessarily recognizes that the Sixth Amendment provides defendants in criminal cases with a right to nondisclosure and that this right remains in place during their § 2255 proceedings.  The Court framed the issue in these § 2255 proceedings as narrower than the issue in *Pinson*—does the Sixth Amendment protection from disclosure that attaches to a defendant's attorney-client communications during a criminal prosecution remain in effect in § 2255 proceedings when the government's acquisition of that communication in the criminal case is being challenged as a Sixth Amendment intentional intrusion claim violation in the § 2255 proceedings?[9]

---

[5] Doc. 230 at 12.

[6] Doc. 205-2.

[7] Doc. 230 at 13 (emphasis in original).

[8] Doc. 587 at 9.

[9] *Id.* at 12.

3

Citing *Greater Newburyport Clamshell Alliance v. Public Service Co.*, the government argued that petitioners incorrectly rely on the Sixth Amendment as a basis for not producing the recordings because the constitutional protection only applies to criminal proceedings.[10]  In *Newburyport*, a civil § 1983 action, the First Circuit held that the "[S]ixth [A]mendment provides a shield for the attorney-client privilege only in criminal proceedings; upon termination of those proceedings and initiation of a civil action putting the privilege at issue, that constitutional protection ends."[11]  This Court distinguished *Newburyport* from these § 2255 motions, which the Tenth Circuit has held are a continuation of a defendant's federal criminal case.  The Court also noted that while the First Circuit held that the Sixth Amendment did not apply in the civil § 1983 action, the plaintiffs' claim was "quasi-constitutional" and adopted a balancing test: it presumed that the plaintiffs' communications remained immune to disclosure and ruled that to overcome that presumption, the government had to show that its need to obtain those communications was proportionate to the residual "[S]ixth [A]mendment concerns" that justified nondisclosure.[12]  The Court found that, like *Newburyport*, the attorney-client relationship the government is attempting to invade through production of the recordings is the very relationship that it allegedly violated while the privilege was still unquestionably covered by the Sixth Amendment.  And the government has acknowledged that relief in these proceedings may entail a new trial.  Thus, granting the government's request for production would effectively perpetuate the underlying Sixth Amendment violations by authorizing the government to do now precisely what it is accused of doing in the underlying criminal cases—obtain access to confidential attorney-client

---

[10] *Id.* at 13 (citing 838 F.2d 13 (1st Cir. 1988)).

[11] 838 F.2d at 19.

[12] Doc. 587 at 15.

communications without any legitimate law enforcement justification for doing so.[13]  The factors discussed in the Court's implied-waiver order continued to weigh against disclosure, at least at that stage of these proceedings.

The Court stressed that because petitioners' theory of relief under *Shillinger* does not require a showing of prejudice for purposes of establishing a Sixth Amendment violation, the government has no need to independently assess the content of the communications at issue in order to defend against petitioners' claims, let alone a need strong enough to outweigh Sixth Amendment concerns that weigh in favor of keeping those communications confidential.[14] Because the petitioners here are not necessarily immune from further prosecution, strongly weighing in favor of nondisclosure, the Sixth Amendment concerns at play in petitioners' criminal cases do not wholly "evaporate" in their § 2255 proceedings.[15]  Instead, *Newburyport* instructs that those concerns give rise to at least a presumption of nondisclosure in these cases, which constitute a continuation of the same federal prosecutions during which the alleged prosecutorial misconduct occurred.  The government did not even attempt to overcome this presumption by showing that its need for information is "proportional to the importance" of the residual constitutional concerns.  Thus, *Newburyport* does not strip Sixth Amendment protection from petitioners' § 2255 motions.

As the Court clarified in its June 4, 2020 Order, "[b]ecause the [S]ixth [A]mendment ensures a right to effective assistance of counsel, it should follow that the [S]ixth [A]mendment

---

[13] *Id.* at 16–17 (citing *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995)).

[14] *Id.* at 17.

[15] *Id.*

subsumes the attorney-client privilege, a necessary underpinning of that right."[16]  As the Fifth Circuit explained in discussing intentional intrusion cases, a communication that "is intended to remain confidential and was made under such circumstances that it was reasonably expected and understood to be confidential" is protected by both the attorney-client privilege and from government intrusion under the Sixth Amendment.[17]  In order to be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy sought by the client."[18]  Accordingly, determining whether a recording is privileged continues to be the logical starting point for the Court's analysis of whether petitioners have made a threshold showing on the "protected attorney-client communication" element of their claims.

The nature of the government's specific objections to the PLs requires *in camera* review of all the recordings.  First, the government objected to all recordings that are not supported by competent evidence, that is, affidavits from defense counsel to confirm that the nature and purpose of the meetings and calls were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.  The Court directed petitioners with audio recording claims to supplement their privilege logs with affidavits from defense counsel specific to their clients that confirm the recorded communications are within the ambit of Sixth Amendment protection.[19]  Second, the government continued to maintain that the attorney-client privilege does not attach (or is waived) when an inmate initiates

---

[16] *Id.  See* Note, *Government Intrusions into Defense Camp: Undermining the Right to Counsel*, 97 Harv. L. Rev. 1143, 1145 (1984) (citing *Weatherford v. Busey*, 429 U.S. 545, 563 (1977); *United States v. Levy*, 577 F.2d 200, 209 (3d Cir. 1978)).

[17] *United States v. Melvin*, 650 F.2d 641, 645 (5th Cir. 1981).

[18] *Id.* (emphasis omitted) (quoting *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998)).

[19] Doc. 587 at 23–24.

an outgoing call after being warned that the call may be subject to recording. The government objected to the audio PLs because they do not include whether the call included a recorded preamble that warned the participants on the call that it may be subject to recording. Although the information included in the fact sheets indicates whether a preamble was played, the government requested this information be included in the PLs. The Court declined the government's sampling suggestion, and instead held that it would listen to the individual audio recordings and denied the objection as moot.[20]

Relative to the motion before it, the Court also stated that the recordings will be made a part of the record in every individual petitioner's case as sealed exhibits.[21] Should any § 2255 motion proceed to evidentiary hearing, the Court reserved ruling on whether the recordings will be unsealed at that time and, if so, what is necessary to protect a petitioner's Sixth Amendment rights in the event the Court finds he or she is entitled to relief that includes future prosecution or retrial. This decision has proved to be prudent, given the number of § 2255 motions that have been dismissed or are subject to dismissal on procedural grounds.

The Court further noted that petitioners' argument that this threshold showing is the legal standard for proving the protected attorney-client communication element of their claims is misplaced. This threshold showing is merely that and petitioners are also required to establish there was a reasonable expectation of confidentiality with respect to the audio recordings and that they did not knowingly or intelligently waive their Sixth Amendment rights.[22] The Court also denied the government's request for leave to conduct discovery on its waiver defense and

---

[20] *Id.* at 29–31. Not at issue here, the Court also rejected the government's general objection to the soundless video recordings on the grounds that the videos had no discernable communicative value, but reserved ruling on the specific objections to individual videos on a case-by-case basis. *Id.* at 25–29.

[21] *Id.* at 30.

[22] *Id.* at 31.

instead ordered petitioners with audio recording claims—like Hohn and Mitchell—to supplement the record with affidavits on the issue of waiver.[23]

Also on October 15, 2020, the Court issued a separate order finding the government's refusal to comply with discovery orders issued by the Court is sanctionable under Fed. R. Civ. P. 37(b)(2) and notified the government of its intent to take as conclusively established certain facts petitioners might have proved regarding the "privy to" element of their Sixth Amendment claims with respect to any petitioner who establishes that he or she is entitled to an evidentiary hearing.[24]  Notably, the Court denied petitioners' request for a Rule 37(b)(2) sanction regarding prejudice, seeking to assume that the alleged misconduct had a substantial and injurious influence on the outcome of petitioners' criminal case.[25]

### January 18, 2021 Orders

On January 18, 2021, the Court issued an order: (1) reaffirming and expanding its holding regarding the applicable Sixth Amendment standard; (2) addressing the collateral-attack waiver by plea issue; and (3) addressing jurisdictional defenses raised by the government, including certification requirements under Rule 2(b) of the Rules Governing Section 2255 Proceedings.[26]

The Court also issued three orders granting individual petitioners an evidentiary hearing on their audio recording claims.  These petitioners—Vernon Brown, Stephen Hohn, and William Mitchell—were all convicted after a jury trial.[27]  The parties have since agreed to settle Brown's

---

[23] *Id.* at 59.

[24] Doc. 588.

[25] *Id.* at 11–12.

[26] Doc. 730.

[27] Doc. 731 (Brown); Doc. 732 (Mitchell); Doc. 758 (Hohn).

case; Mitchell's § 2255 motion is set for hearing on July 6, 2021, and Hohn's § 2255 motion is set for hearing on August 9, 2021.

## II.     Discussion

The government accuses petitioners of relying on "secret evidence" to vacate their jury verdicts and contends, for the third time, that it needs to review the content of the recordings in advance of the evidentiary hearings in order to prove that it did not violate the Sixth Amendment and, even if it did, petitioners are not entitled to a remedy. The government argues that review of the recordings is necessary to show petitioners were not prejudiced, that the recordings are not protected attorney-client communications, and that petitioners are not entitled to the remedy they seek.

At the outset, the Court stresses that far from being "secret evidence," the recordings of petitioners' CCA calls were both subpoenaed by former SAUSA Erin Tomasic and AUSA Terra Morehead as part of petitioners' underlying criminal proceedings and in the government's possession for several years, until the Court ordered it to turn over the calls and derivative evidence to the Federal Public Defender ("FPD") in August 2019.[28] Moreover, after the FPD listened to the calls and provided detailed PLs, the Court listened to the audio calls *in camera* and verified the content of each call to confirm that it was as described in the logs and that it related to legal advice and strategy, as opposed to chats about the weather.[29] The Court also provided specific information requested by the USAO regarding the preamble played at the beginning of the calls and any statements by the parties relating to such. In addition, both

---

[28] Doc. 732 at 10; Doc. 758 at 9.

[29] Doc. 732 at 10–11; Doc. 758 at 10.

petitioners and defense counsel have provided detailed declarations or affidavits regarding the content of the recordings and the circumstances under which they were placed as well as waiver.

The Court addresses the government's arguments in turn.

## A.    Prejudice

The government argues that to fairly defend against allegations it violated the Sixth Amendment, it needs to review the recordings for evidence that will show the prosecution team neither used nor could have used "the substance of the recordings . . . to the government's advantage or to the petitioner's disadvantage."[30]  In other words, the government continues to ignore the holding in *Shillinger* and assert that actual prejudice is an element of petitioners' Sixth Amendment claims.

As this Court previously discussed as recently as the January 18, 2021 Order, under *Shillinger*, once petitioners demonstrate the prosecution team intentionally and unjustifiably become privy to their protected attorney-client communications, prejudice is presumed.[31]  In the Tenth Circuit, this presumption is not rebuttable and results in a per se Sixth Amendment violation.[32]  Accordingly, review of the audio recordings for evidence the government contends might rebut this presumption is not necessary under the *Shillinger* framework.

Nor is review of the recordings necessary to a determination of whether the violation amounts to harmless error.  On habeas review, the court applies the standard in *Brecht v.*

---

[30] Doc. 891 at 4.

[31] *See* Doc. 730 at 10; *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995) (clarifying that it is only in those cases where the government "has a legitimate law enforcement purpose for its intrusion" that a petitioner must demonstrate that there is at least "a realistic probability of injury to [the defendant] or benefit to the [government]," in other words, prejudice).

[32] *See Shillinger*, 70 F.3d at 1140, 1142 (distinguishing between the First Circuit's burden-shifting approach, which treats the presumption of prejudice as rebuttable, and the Third Circuit's per se rule, which does not; ultimately rejecting the former approach and adopting the latter (first citing *United States v. Mastroianni*, 749 F.2d 900, 907 (1st Cir. 1984), then citing *United States v. Levy*, 577 F.2d 200, 210 (3d Cir. 1978))).

*Abrahamson* to determine whether constitutional error warrants relief from the challenged conviction or sentence.[33]  Under this standard, constitutional error may be disregarded unless found to have "had substantial and injurious effect or influence in determining the jury's verdict," with the burden on the movant to establish that the error "resulted in actual prejudice."[34]  "If a reviewing court is in 'grave doubt' as to the harmlessness of an error, the habeas petitioner must win."[35]  The Tenth Circuit has held that *Brecht's* harmless-error analysis is applicable in § 2255 cases.[36]  Fed. R. Crim. P. 52(a) also requires that a defendant show prejudice in order to obtain relief in a § 2255 action.[37]

Notwithstanding *Brecht*, constitutional errors that rise to the level of "structural error," in contrast to ordinary "trial error," require automatic reversal of the conviction or the grant of the writ of habeas corpus.  The Supreme Court has explained, "structural defects in the constitution of the trial mechanism . . . defy analysis by 'harmless-error' standards."[38]  "A defining feature of structural error is that the resulting unfairness or prejudice is necessarily unquantifiable and indeterminate, such that any inquiry into its effect on the outcome of the case would be purely

---

[33] 507 U.S. 619 (1993) (applying harmless-error review to § 2254 movants).

[34] *Id.* at 637–38 (internal quotation marks omitted).

[35] *Crease v. McKune*, 189 F.3d 1188, 1193 (10th Cir. 1999) (quoting *O'Neal v. McAnnich*, 513 U.S. 432, 436 (1995)).

[36] *See United States v. Dago*, 441 F.3d 1238, 1246 (10th Cir. 2006) (holding "the logic behind *Brecht* is applicable in § 2255 cases" and applying harmless-error review to § 2255 claim); *United States v. Driscoll*, 892 F.3d 1127, 1132 (10th Cir. 2018) (same).

[37] *See United States v. Spaulding*, 802 F.3d 1110, 1119 n.9 (10th Cir. 2015) (explaining that Rule 52(a) "obligates a federal court to disregard errors that do 'not affect substantial rights'").

[38] *Arizona v. Fulminante*, 499 U.S. 279, 307–08 (1991).

speculative."[39]  In contrast, the effect of ordinary trial errors "may 'be quantitatively assessed in the context of other evidence presented.'"[40]

In addition, apart from structural error, the Supreme Court in *Brecht* suggested another potential type of error warranting relief.  In Footnote Nine, the Court stated that *Brecht*

> does not foreclose the possibility that in an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict.[41]

The Tenth Circuit has explained that the key inquiry governing "whether the footnote's exemption will be applicable 'is whether the integrity of the proceeding was so infected that the entire trial was unfair."[42]

Petitioners argue that once they show the prosecution team intentionally and unjustifiably became privy to their recordings, the Court must presume this resulted in prejudice.  Critically, petitioners urge that this is true both for purposes of determining whether the government violated the Sixth Amendment *and* for purposes of determining whether the violation amounts to harmless error.  Citing *Shillinger*, petitioners continue to assert that once a petitioner proves the government violated the Sixth Amendment, his § 2255 motion should be granted and the only question before the Court is how—not whether—to remedy that violation.  Because the

---

[39] *United States v. Solon*, 596 F.3d 1206, 1211 (10th Cir. 2010) (quotations omitted); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n.4 (2006) ("[A]s we have done in the past, we rest our conclusion of structural error upon the difficulty of assessing the effect of the error.").

[40] *Gonzalez-Lopez*, 548 U.S. at 148 (quoting *Fulminante*, 499 U.S. at 307–08).

[41] *Brecht*, 507 U.S. at 638 n.9.

[42] *See Duckett v. Mullin*, 306 F.3d 982, 994–95 (10th Cir. 1992) (finding challenged prosecutorial misconduct involving improper remarks in both the guilt and sentencing stages did not rise to the level of Footnote Nine error, noting that such concerns "will manifest themselves in very limited circumstances.").

government cannot demonstrate that it needs to review the recordings in order to rebut the nonrebuttable presumption, the content of the recordings should not be turned over.

In other words, petitioners claim that under *Shillinger*, intentional-intrusion Sixth Amendment violations are structural errors. As this Court discussed in the January 18 Order, the Tenth Circuit held that "when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed."[43] The court reasoned that "no other standard can adequately deter this sort of misconduct," and that "prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost."[44] The court further explained that its holding "subsumes the state's argument that harmless error analysis should apply to this sort of Sixth Amendment violation because our *per se* rule recognizes that such intentional and groundless prosecutorial intrusions are never harmless because they 'necessarily render a trial fundamentally unfair.'"[45] Thus, the Tenth Circuit is part of the split within the Circuit Courts recognizing per se intentional-intrusion Sixth Amendment violations and mirrors the language used by the Supreme Court to identify structural errors.[46]

This Court also rejected the government's argument that under *United States v. Gonzalez-Lopez*, petitioners must nonetheless establish actual prejudice to demonstrate that the government violated the Sixth Amendment.[47] The *Shillinger* court expressly acknowledged both *Strickland*'s

---

[43] *Shillinger v. Haworth*, <u>70 F.3d 1132, 1142</u> (10th Cir. 1995).

[44] *Id.* (quoting *Strickland v. Washington*, <u>466 U.S. 668, 692</u> (1984)).

[45] *Id.* (quoting *Rose v. Clark*, <u>478 U.S. 570, 577</u> (1986)).

[46] *See* <u>Doc. 730 at 9</u>–10 (collecting cases).

[47] *Id.* at 13 (citing <u>548 U.S. 140</u> (2006)).

general rule and its direct-interference exception.[48]  Thus, *Gonzalez-Lopez* does not alter that exception that a defendant need not always show prejudice to prove a Sixth Amendment claim. And because the Tenth Circuit reached the same conclusion in *Shillinger*, the decision is consistent with the Supreme Court's decision in *Gonzalez-Lopez*.[49]  Petitioners also cite Footnote Nine as an alternative source of relief.

Accordingly, because *Shillinger* establishes that intentional-intrusion violations such as those alleged here are not subject to harmless-error review, the violation itself warrants relief, that is, grant of the petitioner's § 2255 motion.  Thus, as *Shillinger* instructs, it is only what happens after the Court grants relief that is up for debate—what remedy to impose.[50]

As petitioners note, the government does not acknowledge this aspect of *Shillinger* in its harmless-error discussion.  Instead, it continues to question whether *Shillinger* is good law in light of the Supreme Court's view in *Weatherford* and *Morrison* that at least "a realistic probability" of prejudice must be demonstrated to substantiate a Sixth Amendment violation of the kind alleged here, and a presumption falls short of this demonstration.[51]  But as this Court has explained, the Tenth Circuit analyzed and distinguished *Weatherford*, noting that the Supreme Court "emphasized both the absence of purposefulness in the prosecutor's intrusion and the legitimate law enforcement interests at stake."[52]  The *Shillinger* court concluded, unlike in *Weatherford*, that "the intrusion here was not only intentional, but also lacked a legitimate law

---

[48] *Shillinger*, 70 F.3d at 1141 (citing *Strickland*, 466 U.S. at 692).

[49] Doc. 730 at 16.

[50] After affirming the lower court's grant of habeas relief, the *Shillinger* court remanded for an evidentiary hearing to determine if the remedy imposed—a new trial—was tailored to cure the taint of the intentional-intrusion violation or whether the government's conduct justified a different remedy, such as recusal of the original prosecution team or even dismissal of the indictment.  *Shillinger*, 70 F.3d at 1142–43.

[51] *See* Doc. 745 at 133 n.97.

[52] *Shillinger*, 70 F.3d at 1138–39.

enforcement purpose."[53]  The court also explained that *Morrison* "left open the question of whether intentional and unjustified intrusions upon the attorney-client relationship may violate the Sixth Amendment even absent proof of prejudice."[54]  As previously discussed, *Morrison* never reached the prejudice question, "holding only that even if the defendant's Sixth Amendment rights were violated, dismissal of the indictment was an inappropriate remedy in that case."[55]  The government's motion is denied on these grounds.

### B.  Protected Communications/Waiver

Next, the government argues that it must review the recordings to demonstrate that they are not protected attorney-client communications, either because they are not privileged or protected or because petitioners waived any right to confidential attorney-client communications. The Court disagrees.

As previously discussed, this Court has determined that both petitioners' recorded communications relate to legal advice or strategy.[56]  Nevertheless, the government argues that it needs to review the recordings prior to the evidentiary hearings to "weigh in" and confirm as much.  The government urges that any call petitioners made is subject to a challenge that it is not protected by the Sixth Amendment on several grounds, including: (1) the call might contain evidence that the parties on the call were aware or should have been aware that the call was subject to monitoring (such as the recorded preamble or a statement by one of the parties); (2) the parties on the call discussed harmless subjects not touching on legal advice or strategy (such as weather, scheduling issues, complaint about jailhouse conditions, etc.); and (3) the content of

---

[53] *Id.* at 1139.

[54] *Id.* at 1140.

[55] *Id.*

[56] Docs. 731, 758.

the communications about legal advice or strategy discussed on the call was conveyed by the petitioner or his counsel to third parties after the call, including the government, thereby "extinguishing" any privilege or Sixth Amendment protection with respect to the subsequently-disclosed communication. The Court has already reviewed the recordings for the information listed above and confirmed the preamble played at the start of each call and that the recordings contain neither a discussion of this preamble nor any other statements evincing awareness that the calls were being recorded. And, assuming the government would raise these objections with respect to many if not all of the recordings, the Court has been able to resolve this issue by reviewing the recordings *in camera*.[57]

The government further argues that it must review the recordings to determine whether petitioners "waived any right to confidential attorney-client communications" by (1) placing the calls; (2) later disclosing the substance of the communications to third parties; or (3) later disclosing the substance of the communications to the prosecutors.[58] The Court disagrees.

### 1.    Placing the Recorded Calls

First, the government states that it is not arguing that the mere presence of a third person—in this case, a recording device—is sufficient for a person to waive their Sixth Amendment right. Instead, it takes issue with petitioner's decision to place a call to his attorney on an obviously recorded line after being warned multiple times in multiple ways that conversations on that line will be recorded and therefore not be confidential. Under such circumstances, it urges, Sixth Amendment protections simply do not attach because the

---

[57] *See United States v. Robinson*, 209 A.3d 25, 42 (Del. 2019) (reviewing *in camera* defendant's protected documents that were the subject of a Sixth Amendment intentional-intrusion claim in conjunction with an evidentiary hearing on motion to dismiss indictment).

[58] Doc. 891 at 3.

communication is not reasonably expected and understood to be confidential. This blanket objection was rejected in the Court's previous rulings on the law surrounding the jail call waiver issue, and the government does not explain how listening to the content of the recordings will help it determine whether petitioners waived their Sixth Amendment rights by placing the recorded calls.[59]

### 2. Subsequent Disclosure to Third Parties

The government next argues that it needs to review the recordings to catalog each statement made during each call and determine whether petitioners later disclosed the substance of these statements to trusted third parties. But the Court previously rejected this argument because the government failed to explain (1) how such a disclosure after-the-fact destroys the expectation of confidentiality at the time of the actual attorney-client conversation," or (2) how this waiver of the attorney-client privilege would constitute a knowing and voluntary waiver of any petitioners' Sixth Amendment right.[60]

The government responds that any disclosure after-the-fact assumes that it occurred after the government obtained the petitioner's recordings, a question that would have to be answered on a petitioner-by-petitioner and call-by-call basis, which the government cannot do until it is able to review the recordings. But the government still does not explain how this disclosure destroys the expectation of confidentiality or why it cannot use the PLs, which set out the date, time, duration, and general description of each call, to question petitioners at the evidentiary hearings.

---

[59] *See Black* Order, No. 16-20032-JAR, Doc. 785 at 166–76; Doc. 587 at 39–45.

[60] Doc. 587 at 42.

### 3. Subsequent Disclosure to Prosecutors

The government advances a new waiver theory, arguing that it needs to review the recordings to determine whether they contain statements petitioners later disclosed to the prosecutors themselves. This argument was not raised in the government's response to petitioners' § 2255 motions or any subsequent supplemental briefing. As petitioners note, the government fails to explain how this disclosure after-the-fact destroys the expectation of confidentiality at the time of the actual protected conversation, nor does it address how any purported waiver was knowing, intelligent, and voluntary. Nor does the government address how the act of disclosing a fact discussed during an attorney-client conversation would authorize the prosecutor to review the attorney-client conversation itself. The Court agrees that under the government's argument, a defendant effectively foregoes the right to complain about the prosecution team's intrusion upon his attorney-client discussion about a matter related to legal advice or strategy when the defense team implements—and thus discloses to the prosecutor—the same legal advice or strategy the defense team previously discussed. This waiver theory appears to be another attempt to circumvent the *Shillinger* per se rule, as it seeks to show these subsequent disclosures rendered harmless the initial intrusions. This would effectively permit prosecutors to retroactively insulate their misconduct by showing that they were able to learn from independent sources the same information they originally obtained via their intentional intrusions. The government's motion is also denied on these grounds.

### C. Remedy

Finally, the government argues that it needs to review the recordings to determine whether petitioners are entitled to the relief they seek. Section 2255 gives a district court a broad range of remedial powers. If the court finds that the petitioner is entitled to relief, "the court shall

vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[61]

Petitioners seek dismissal with prejudice to refiling. Significantly, while conceding that actual prejudice can "inform" the remedy question, petitioners do not assert that they can prove actual and additional prejudice occurred. Instead, they request a remedy based solely on *Shillinger's* presumption of prejudice and its promise of deterrence. Petitioners argue that under *Shillinger*, the pervasiveness of the government intrusion drives the remedy necessary to purge the taint of the intrusion—ranging from resentencing, to a new trial, and, in extreme circumstances, dismissal of the indictment. Petitioners acknowledge that under *Morrison*, actual prejudice is required for the drastic remedy of dismissal of an indictment.[62] And the Tenth Circuit recently counseled that *Morrison* requires that courts rule out "more narrowly tailored remedies" before resorting to the "extraordinary remedy" of dismissing an indictment.[63] But petitioners also argue that under *Morrison*, their cases present such extreme circumstances, based on the pattern of recurring violations by the government that warrant a more extreme remedy to deter further lawlessness.[64]

Petitioners further argue that requiring them to show individual prejudice before vacating their convictions with prejudice would subvert *Shillinger*'s stated objective of deterrence by (1)

---

[61] 28 U.S.C. § 2255(b).

[62] 449 U.S. 361, 364 (1981).

[63] *United States v. Orozco*, 916 F.3d 919, 925 (10th Cir. 2019).

[64] *Morrison*, 449 U.S. at 365 n.2 noting the record did "not reveal a pattern of recurring violations by investigative officers that might warrant the imposition of a more extreme remedy in order to deter further lawlessness"); *see also Brecht v. Abrahamson*, 507 U.S. 619, 638 n.9 (1993) ("[while] not presented with such a situation here[,] . . . [o]ur holding does not foreclose the possibility that in an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict"); *Robinson*, 209 A.3d 25, 57–59 (Del. 2019) (discussing *Morrison*).

rewarding government malfeasance; and (2) necessarily requiring the parties to litigate the individual-prejudice question in each petitioner's case.  The Court agrees.  As explained, under *Shillinger*, once petitioners prove the elements for a per se violation, the Court must grant their § 2255 motions.  The question for the Court then becomes how to tailor the relief to cure the taint.

Petitioners argue that under the unique circumstances of this case, collectively dismissing with prejudice is the only remedy that "adequately deters this type of misconduct."[65]  The extreme remedy of dismissal with prejudice is the only remedy petitioners seek.  The government has steadfastly adhered to its position that no Sixth Amendment violation occurred and never proposed an alternative remedy.  Thus, this Court is faced with diametrically opposite "all or nothing" proposals on the remedy spectrum.

At their evidentiary hearings, petitioners will have to demonstrate whether they are entitled to dismissal without prejudice.  While petitioners have consistently stated this position in their § 2255 motions and throughout these proceedings, they have now made clear that they cannot demonstrate actual prejudice.  Instead of showing an individual petitioner was actually prejudiced by the government's intentional intrusion, they will presumably rely on evidence of the government's pattern of misconduct, both before and after the Sixth Amendment violation.  Thus, disclosure of the content of the recordings to the government prior to the hearings is not necessary to a determination of what remedy is necessary to cure any taint from the Sixth Amendment violation.  The government's motion is denied on these grounds.

---

[65] *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995).

**IT IS THEREFORE ORDERED BY THE COURT** that the government's Motion for

Order (Doc. 891) allowing it to review the call recordings on which petitioners' claims are based

in advance of their evidentiary hearings is **denied**.

**IT IS SO ORDERED.**

Dated: June 14, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
